**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Jose LOPEZ, Appellant.**

Superior Court of Pennsylvania.

Submitted June 4, 2012.
Filed Aug. 8, 2012.

Mitchell S. Strutin, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney and Karen B. Jordan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., and COLVILLE, J.[*]

OPINION BY STEVENS, P.J.

Appellant Jose Lopez (hereinafter "Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on January 26, 2011, at which time he was sentenced to an aggregate sentence of twelve and one-half (12 1/2) years to twenty-five (25) years in prison following his convictions of aggravated assault graded as a first degree felony,[1] violations of the Uniform Firearms Act[2] and Possessing an Instrument of Crime.[3] Upon our review of the record, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702(a).

[2] 18 Pa.C.S.A. §§ 6106, 6108. The record indicates Appellant waived his right to a jury trial, and the trial court convicted him of 18 Pa.C.S.A. § 6105.

[3] 18 Pa.C.S.A. 907(a).

The trial court detailed the relevant facts herein as follows:

Mr. Maurice Robinson ("complainant") testified as follows: In the late evening of December 2, 2008, he was standing at the corner of 5th and York Streets conversing with four older gentlemen. N.T., 12/10/10, at 29. The complainant observed [ ] Appellant, accompanied by an older lady, walking down the street. *Id.* at 32. The complainant recognized [ ] Appellant as an individual from the neighborhood and recalled previously seeing him four or five times on that exact corner, each time selling heroin. *Id.* at 34. The complainant also sold heroin on the same corner in 2008. *Id.* at 29. The complainant indicated he could see him "as clear as day." *Id.* at 37.[ ] Appellant, who was walking a dog, transferred the leash to the woman in his company. *Id.* at 39. The complainant was familiar with the woman from the neighborhood and knew where she lived. N.T., 12/10/10, at 54. The complainant observed [ ] Appellant walk up 5th Street where he briefly bent down. *Id.* at 43.[ ] Appellant then walked toward the complainant and the two made eye contact. *Id.* at 44.[ ] Appellant proceeded to walk past the complainant. *Id.* [ ] Appellant then turned around and the complainant observed him holding a black semiautomatic handgun. *Id.* at 47–48.[ ] Appellant then discharged the weapon multiple times, striking the complainant once in the upper left leg. *Id.* at 52. The complainant immediately ran to a payphone located approximately two blocks away and called 911. N.T., 12/10/10, at 53.[ ] Appellant ran the opposite direction toward Sixth Street. *Id.*

Philadelphia Police Officer Jason Judge, badge number 5428, testified that he responded to 500 York Street following a radio call at approximately 3:59 a.m. *Id.* at 134. Officer Judge came into contact with the complainant, who directed him to 2311 North 5th Street. *Id.* at 124. Officer Judge subsequently transported the complainant to Temple Hospital. *Id.* at 131. Officer Judge prepared an incident report, and was later interviewed by detectives assigned to the case. *Id.*

Detective Shawn Leahy, badge number 8136, testified regarding his investigation of the case. Detective Leahy interviewed the complainant at approximately 8:17 a.m. N.T. 12/10/10, at 164. Detective Leahy also presented a photo array to the complainant, after which the complainant identified [ ] Appellant as the shooter. *Id.* at 168. Detective Leahy acquired a C.A.D. report from a 911 call placed at 3:58 a.m. detailing a shooting. *Id.* at 178–80. Recovered in Detective Leahy's presence were three shell casings from the southwest corner of 5th and York Streets. *Id.* at 182. Two casings were .25 caliber and one was .22 caliber. *Id.* Detective Leahy also executed a search warrant at 2311 North 5th Street, second floor, rear bedroom. *Id.* at 189. The residence was located approximately one-quarter block from the location of the shooting. N.T. 12/10/10, at 241. Recovered pursuant to the search were .25 caliber ammunition, men's clothing, and multiple documents bearing the name Angel Adorno. *Id.* at 190–191. Some of the mail was addressed to 2311 North 5th Street. *Id.* at 191. Other documents, including bank statements[,] were addressed to 135 North 11th Street. *Id.* at 200. The brand of the ammunition recovered matched that of the fired casings recovered at the scene. *Id.* at 196, 198. Among the documents recovered were multiple letters authored by "Jamie." *Id.* at 199. Through his in-

vestigation, Detective Leahy determined that [ ] Appellant maintained the alias Angel Adorno. N.T. 12/10/10, at 187.

Philadelphia Police Officer Michael Cermignano, badge number 4034, testified that he entered the property at 2311 North 5th Street. N.T. 12/13/10, at 13. The residence was a home converted into apartments. *Id.* Officer Cermignano accessed each of the rooms except for the second floor rear room, which was padlocked. *Id.* at 15. Officer Cerm[i]gnano was able to gain entry to the remaining rooms which were open. *Id.* Officer Cermignano presented two Hispanic males for possible identification by the complainant. *Id.* at 9, 14. The complainant indicated that neither individual was the shooter. *Id.*

Ms. Jamie Eisenhuth testified that she maintained a relationship with [ ] Appellant and resided with him at 135 North 11th Street from approximately July 2006 to February 2009. N.T., 12/13/10, at 47–48. Ms. Eisenhuth also testified that [ ] Appellant maintained the alias "Angel Adorno" for purposes of their written leasing agreement. *Id.* at 64. Ms. Eisenhuth's hours of employment during their period of cohabitation were 6:00 a.m. to 2:00 p.m. Monday through Friday. *Id.* at 50. Ms. Eisenhuth frequented a bar with [ ] Appellant located near 4th and York Streets. *Id.* at 62. Ms. Eisenhuth was not present with [ ] Appellant during her hours of employment. *Id.* at 63.

The Commonwealth introduced the following stipulations: Firearm Examiner Officer Gaghan would testify that the two .25 caliber fired cartridge casings were manufactured by PMC. *Id.* at 68. He would also testify that the factory ammunition box containing ten .25 caliber cartridges was [sic] also manufactured by PMC. N.T. 12/13/10, at 69.

The single .22 caliber fired cartridge was manufactured by Winchester. *Id.* The two .25 casings were ejected from the same firearm while the .22 caliber fired casing could not have been ejected from the same weapon. *Id.* Additionally, a custodian of records from the Pennsylvania State Police would testify to the authenticity of a Certificate of Nonlicensure for the Appellant on December 2, 2008. *Id.* at 71. Finally, if called to testify, a custodian of records for Temple University Hospital would authenticate the complainant's medical records and specifically indicate that the complainant was treated for a gunshot wound to his left thigh. *Id.* at 73.

Trial Court Opinion, filed 2/7/12 at 1–4.

Appellant filed a timely notice of Appeal on February 8, 2011. The trial court filed its Order pursuant to Pa.R.A.P. 1925(b) on October 20, 2011, and Appellant filed his Concise Statement of Errors Complained of on Appeal on November 4, 2011. The trial court filed its Pa.R.A.P. 1925(a) Opinion on February 7, 2012.

In his brief, Appellant raises the following five (5) issues for our review:

I. Is [Appellant] entitled to an arrest of judgment with regard to his convictions since the evidence is insufficient to sustain the verdicts of guilt as the Commonwealth failed to sustain its burden of proving [Appellant's] guilt beyond a reasonable doubt?

II. Is [Appellant] entitled to a new trial as a result of the trial court's error in its ruling that allowed the Commonwealth to present hearsay during the testimony of Detective Shawn Leahy in the form of a statement prepared by a third party?

III. Is [Appellant] entitled to a new trial as a result of the trial court's error in its ruling that allowed the Commonwealth to present hearsay during the testimony of Detective Shawn Leahy in the form of a statement of the complainant, Maurice Robinson?

IV. Is [Appellant] entitled to a new trial as a result of the trial court's error in its ruling that allowed the Commonwealth to present Jamie Eisenhuth as a witness at trial?

V. Is [Appellant] entitled to a new trial as a result of the trial court's error in its ruling that denied [Appellant's] motion for a mistrial at the conclusion of the prosecutor's summation?

Brief for Appellant at 5. We will consider each of these issues in turn.

When presented with a challenge to the sufficiency of the evidence, this Court's well-settled standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Chine*, 40 A.3d 1239, 1242 (Pa.Super.2012) (citations omitted).

A person is guilty of aggravated assault when he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Firearms not to be carried without a license provides that:

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a). In addition, Carrying firearms on public streets or public property in Philadelphia states:

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1) such person is licensed to carry a firearm; or

(2) such person is exempt from licensing under section 6106 of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. § 6108. Finally, one is guilty of Possessing Instruments of Crime, a misdemeanor of the first degree, "where he possesses any instrument of crime with

intent to employ it criminally." 18 Pa. C.S.A. § 907(a).

■ Appellant contends he is entitled to an arrest of judgment because his convictions were based upon "speculation and conjecture" in that no physical evidence connected him to and no motive had been established for his commission of the crimes. Brief for Appellant at 21–22. However, as Appellant notes later in his in brief, motive is not necessary to prove one's guilt. *See* Brief for Appellant at 23 *citing Commonwealth v. Dougherty*, 580 Pa. 183, 860 A.2d 31 (2004), *cert. denied*, 546 U.S. 835, 126 S.Ct. 63, 163 L.Ed.2d 89 (2005). Moreover, two of the fired cartridge casings found at the scene matched those found in a box of ammunition found in Appellant's room. Regardless, "[t]he Commonwealth may sustain its burden by means of wholly circumstantial evidence" and "the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence, coupled with the reasonable inferences drawn therefrom, overcomes the presumption of innocence." *Commonwealth v. Stays*, 40 A.3d 160, 167 (Pa.Super.2012) (citations omitted). Also, the parties stipulated at trial that a custodian of records in the area of firearm certification from the Pennsylvania State Police would testify that Appellant did not have a valid license to carry a firearm in the Commonwealth of Pennsylvania under a specific section of either 18 Pa.C.S.A. § 6109 or 18 Pa.C.S.A. § 6106, on December 2, 2008. N.T., 12/13/10, at 71. As such, we find this portion of Appellant's

sufficiency of the evidence claim is meritless.

■ Appellant further asserts the testimony presented at trial failed to prove beyond a reasonable doubt that Appellant shot Mr. Robinson. In support of this assertion, Appellant argues Mr. Robinson testified he was not Appellant's rival and did not identify him until he was shown photographs of Appellant. Appellant further maintains Mr. Robinson provided inconsistent testimony regarding the number of times he had been shot and whether Appellant was a drug dealer. Appellant also notes that while Mr. Robinson claimed he had been robbed during the incident, Appellant was not charged with robbery. Brief for Appellant at 21–23. Such claims are directed entirely to the credibility of Mr. Robinson's testimony, and, as such, challenge the weight, not the sufficiency, of the evidence. *Commonwealth v. Palo*, 24 A.3d 1050, 1055 (Pa.Super.2011). However, the record reveals that Appellant has failed to raise before the trial court a challenge to the weight of the evidence in either an oral or written motion for a new trial pursuant to Pa.R.Crim.P. 607.[4] Therefore, he has waived this claim. *Id. See also Commonwealth v. Mack*, 850 A.2d 690 (Pa.Super.2004) (holding that, pursuant to Rule 607, a challenge to the weight of the evidence must be raised with the trial judge or it will be waived). Nevertheless, we find that:

[e]ven if Appellant had preserved his weight claim, he would gain no relief. The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence,

---

4. Pennsylvania Rule of Criminal Procedure 607 provides, in pertinent part, that:
(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or
(3) in a post-sentence motion.
Pa.R.Crim.P. 607(A).

and to assess the credibility of the witnesses. *Commonwealth v. Johnson,* 542 Pa. 384, 668 A.2d 97, 101 (1995). Questions concerning improper motive go to the credibility of the witnesses. *Commonwealth v. Boxley,* 575 Pa. 611, 838 A.2d 608, 612 (2003). An appellate court cannot substitute its judgment for that of the jury on issues of credibility. *Commonwealth v. DeJesus,* 580 Pa. 303, 311, 860 A.2d 102, 107 (2004).

*Commonwealth v. Palo,* 24 A.3d 1050, 1055 (Pa.Super.2011).

Herein, in reaching its verdict, the jury obviously credited Mr. Robinson's testimony despite cross-examination designed to impeach his credibility. As we may not disturb the jury's credibility determinations in this regard, this claim, if preserved, would have failed.

▬ In his second and third issues, Appellant asserts the trial court improperly permitted the admission of hearsay testimony. "The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *McManamon v. Washko,* 906 A.2d 1259, 1268–1269 (Pa.Super.2006) (citation and ellipsis omitted), *appeal denied,* 591 Pa. 736, 921 A.2d 497 (2007).

▬ Appellant first argues the trial court erred in permitting Detective Shawn Leahy to refer to the Police Department's log when testifying. Specifically, the log aided Detective Leahy in recalling that Officers Nicoletti and Cermignano were the first officers to respond to the scene of

the shooting and the first two interviewed between 4:00 a.m. and 6:10 a.m. on December 2, 2008, and that Officer McGuigan also was interviewed. Counsel for Appellant objected to such questioning on hearsay grounds, and the trial court overruled the objection after noting that Detective Leahy was referencing an official document prepared in the ordinary course of Police Department business, to which defense counsel responded, "Very well." N.T., 12/10/10, at 160–161.

In *Commonwealth v. May,* 587 Pa. 184, 898 A.2d 559, 565 (2006), *cert. denied,* 549 U.S. 1022, 127 S.Ct. 557, 166 L.Ed.2d 414 (2006), our Supreme Court referenced its prior holding in *Commonwealth v. Graver,* 461 Pa. 131, 334 A.2d 667 (1975), that a log of police reports was a business record for the purpose of the exception to the hearsay rule. Further, police reports are exempt from hearsay disqualification pursuant to the Public Records Statute, 42 Pa. C.S. § 6104. *Id.* Moreover, Officer Cermignano later testified that he and Officer Nicolette were the first to meet Mr. Robinson at the scene of the incident. N.T. 12/13/10–5–9; thus, Detective Leahy's reference to the Police Department's Log was cumulative of other, properly admitted evidence *Commonwealth v. duPont,* 860 A.2d 525, 535 (Pa.Super.2004) (finding evidentiary errors are harmless where the disputed evidence is cumulative of other evidence).

▬ Appellant further posits that the Commonwealth impermissibly presented hearsay during Officer Leahy's testimony in the form of a statement made by Mr. Robinson. Brief for Appellant at 29.

"A party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made." *Commonwealth v. Cousar,* 593 Pa. 204, 231, 928 A.2d 1025, 1041 (2007), *cert. denied,* 553 U.S. 1035, 128 S.Ct. 2429, 171 L.Ed.2d 235

(2008). If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal. *Commonwealth v. Arroyo*, 555 Pa. 125, 142, 723 A.2d 162, 170 (1999); *Commonwealth v. Stoltzfus*, 462 Pa. 43, 60, 337 A.2d 873, 881 (1975) (stating: "It has long been the rule in this jurisdiction that if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived, and may not be raised post-trial"); *Commonwealth v. Duffy*, 832 A.2d 1132, 1136 (Pa.Super.2003), *appeal denied*, 577 Pa. 694, 845 A.2d 816 (2004) (stating party must make timely and **specific** objection to preserve issue for appellate review).

*Commonwealth v. Bedford*, 2012 WL 1950152, at \*5 (Pa.Super. May 31, 2012) (emphasis in original). This Court has deemed an appellate claim that testimony constituted inadmissible hearsay waived where, at trial, counsel merely said without this explanation "Objection." *Commonwealth v. Willis*, 380 Pa.Super. 555, 552 A.2d 682, 690 (1988) (en banc) (plurality opinion), appeal denied, 522 Pa. 583, 559 A.2d 527 (1989).

■ Also, "[i]t is an appellant's duty to ensure that the certified record is complete for purposes of review." *Commonwealth v. Reed*, 601 Pa. 257, 971 A.2d 1216, 1219 (2009). In addition, our Court has stated a "[f]ailure to ensure that the record provides sufficient information to conduct a meaningful review constitutes waiver of the issue sought to be reviewed. Where portions of a proceeding are unrecorded, appellant's burden to supply a record may be satisfied through the statement in absence of transcript procedures. *See* Pa.R.A.P. 1923." *Commonwealth v. Steward*, 775 A.2d 819, 835 (Pa.Super.2001) (citation and quotations omitted), *appeal denied*, 568 Pa. 617, 792 A.2d 1253 (2001).

■ Herein, the Commonwealth questioned Detective Leahy regarding a handwritten statement Mr. Robinson completed in Detective Leahy's presence and specifically asked "Did Mr. Robinson tell you at any point that he was robbed and then shot?" N.T., 12/10/10, at 161. Counsel for Appellant objected and asked for a discussion at sidebar. Such discussion was held off the record, and the trial court thereafter noted for the record that the objection was overruled. Nowhere did counsel specifically indicate his grounds for the objection on the record, and the failure to ensure the sidebar discussion was transcribed has deprived us of an opportunity to ascertain counsel's arguments. N.T., 12/10/10, at 169. As such, this claim is waived.

Appellant next maintains he is entitled to a new trial due to the trial court's erroneously permitting the Commonwealth to present the testimony of Ms. Jamie Eisenhuth. Appellant asserts that as he was unaware of the Commonwealth's intention to present Ms. Eisenhuth's testimony until almost the day of trial, her testimony resulted in a "trial by ambush." Brief for Appellant at 34. Appellant further claims that the Commonwealth's alleged failure to timely notify him of its intention to present Ms. Eisenhuth as a witness at trial resulted in his being denied an opportunity to "investigate her background and the substance of her proposed testimony." *Id.* at 35.

In determining that the Commonwealth had complied with the dictates of Pa. R.Crim.P. 573, which sets forth the procedure governing pre-trial discovery, the trial court reasoned in its Opinion that Ms. Eisenhuth had not been cooperative with the Commonwealth and its inability to obtain a statement from her under such circumstances would not be viewed as a denial of Appellant's right to a fair trial. The

trial court also stressed that her attendance in court was compulsory and that the prosecution properly provided defense counsel with her name and an offer of proof at the time of trial. Trial Court Opinion, filed 2/7/12 at 8 *citing N.T.,* 12/13/10, at 41, 46.

A review of the record reveals that defense counsel objected to Ms. Eisenhuth's testifying in light of the Commonwealth's failure to locate her during the one and one-half year time period that preceded trial. N.T., 12/13/10, at 39–42. The Commonwealth informed the trial court it had placed Ms. Eisenhuth on its witness list though she was unwilling to cooperate with police and was brought to trial reluctantly by the police to testify. The Commonwealth explained that it had had no contact with her prior to December 13, 2010, and that she had completed no formal, written statement. Indeed, the Commonwealth was unsure of the specific testimony Ms. Eisenhuth would provide as is apparent from the prosecutor's following request: "May I now get permission to step back and speak with her—I haven't even talked with her—about her testimony." N.T., 12/13/10, at 43.

■ Importantly, at no time did counsel for Appellant request a continuance in light of Ms. Eisenhuth's pending testimony. "Generally, a short continuance is deemed sufficient to eradicate possible prejudice and enable the defendant to assimilate the new information." *Commonwealth v. Rosa,* 415 Pa.Super. 298, 609 A.2d 200, 204 (1992) (citations omitted). Moreover, even if the Commonwealth herein had not timely disclosed Ms. Eisenhuth's identity to Appellant, "a defendant seeking relief from tardy disclosure under the rule still must demonstrate prejudice." *Commonwealth v. Gordon,* 364 Pa.Super. 521, 528 A.2d 631, 635 (1987) (citing *Commonwealth v. Rodgers,* 500 Pa. 405, 456

A.2d 1352 (1983)). Appellant has failed to so, for Ms. Eisenhuth's testimony was limited to her prior romantic relationship at the time of the incident. Specifically, Ms. Eisenhuth confirmed that Appellant used the alias Angel Ardono, stated that she sent Appellant letters which were found in his residence, and confirmed that the couple frequented a bar at 4th and York Streets. N.T., 12/13/10, at 46–66. Appellant certainly would have been aware of his three-year involvement with Ms. Eisenhuth and also had the opportunity to cross-examine her. As such, we find this claim is without merit.

■ In his final issue presented, Appellant argues the trial court erred in not granting him a mistrial after it sustained his objection to a portion of the prosecutor's closing argument. Specifically, Appellant references the following statement:

> Ask yourself, why would he take that stand, point the finger at this guy if, at the end of the day when he goes back out on that street, he's got to face this guy and he has to face their friends in common.
>
> There is no reason in the world for Maurice Robinson to take this stand and implicate [ ] [Appellant], because if he did, he would ultimately, on the streets of 5th and York, suffer way more serious injury than just a bullet shot to the leg. And I think you all know what I'm talking about, the sad reality.

N.T., 12/13/10, at 109. Defense counsel objected following these comments, and the trial court sustained the objection, though it denied counsel's later request for a mistrial. N.T., 12/13/10 at 109, 130–131.

We review the trial court's decision to deny a mistrial for an abuse of discretion. *Commonwealth v. Boone,* 862 A.2d 639, 646 (Pa.Super.2004). A mistrial is

necessary only when "the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa.Super.2008), *appeal denied*, 600 Pa. 755, 966 A.2d 571 (2009). A mistrial is inappropriate where cautionary instructions are sufficient to overcome any potential prejudice. *Id.*

*Commonwealth v. Bedford*, 2012 WL 1950152, at *4 (Pa.Super. May 31, 2012). In addition,

"[o]ur standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion." *Commonwealth v. Solomon*, 25 A.3d 380, 383 (Pa.Super.2011), *appeal denied*, —— Pa. —— [40] A.3d [1236] (March 7, 2012). "In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one." *Id.* Not every inappropriate remark by a prosecutor constitutes reversible error. *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa.Super.2005), *appeal denied*, 593 Pa. 726, 928 A.2d 1289 (2007). A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. *Solomon, supra* at 310. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict. *Commonwealth v. Rolan*, 964 A.2d 398, 410 (Pa.Super.2008).

*Id.,* at *7.

■ In its Opinion, the trial court reasoned as follows:

[T]he argument that the complainant has a disincentive to lie for fear of retribution was not entirely without basis following defense counsel's effort to elucidate the inner-workings of the drug-selling hierarchy and the complainant's financial accountability to his superiors. Considering the defense's focus on the complainant's role in a drug network,[8] the comment was not such that its unavoidable effect was to prejudice the jury.

Although the prosecutor's argument was to some degree reasonably responsive, the court nevertheless cautiously sustained defense counsel's objection to it. N.T., 12/13/10, at 109. Furthermore, the prosecutor's speculation, even if erroneous, was cured by the trial court's instruction. *See Id.* at 129–30. At the close of the prosecutor's arguments, the court immediate[ly] cautioned the jury regarding potentially speculative argument; specifically, the court stated:

"Members of the jury, as I indicated to you earlier, argument is simply that, it's argument. If any of it appeals to your sense of reasoning and logic, you may consider it. Otherwise you can completely disregard it. Any argument that calls for you to speculate as to what might have happened or what might happen, which is not based upon any evidence presented in this case, is to be completely disregarded. You will base your deliberations on the facts and the evidence that was adduced here in the courtroom."

*Id.* The jury is presumed to follow the trial court's instructions. *Commonwealth v. Minerd*, 562 Pa. 46, 753 A.2d 225, 232 (Pa.2000). Therefore, the trial court did not abuse its discretion in refusing a mistrial.

---

8. *See* N.T. 12/13/10, at 97.

Trial Court Opinion, filed 2/7/12 at 9–10.

Upon our review of the record, we find the trial court's cautionary instruction was

sufficient to overcome any potential prejudice the prosecutor's statement may have had upon Appellant, and the trial court did not abuse its discretion when denying Appellant's request for a mistrial.

Judgment of Sentence Affirmed.