J-S52041-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT |
| | : | OF |
| Appellee | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JONATHAN RALPH HAUBERT, | : | |
| | : | |
| Appellant | : | No. 196 MDA 2018 |

Appeal from the Judgment of Sentence January 4, 2018
in the Court of Common Pleas of Perry County
Criminal Division at No(s): CP-50-CR-0000495-2016

BEFORE:    BENDER, P.J.E., MCLAUGHLIN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:    **FILED: NOVEMBER 9, 2018**

Jonathan Ralph Haubert (Appellant) appeals from his January 4, 2018 judgment of sentence imposed after he was found guilty of burglary, criminal trespass, theft by unlawful taking, and criminal mischief.  We affirm.

The incident giving rise to these charges stems from Laura Fawver's[1] discovery on June 3, 2015, that a safe had been stolen from her home. Appellant had been performing yard work for Ms. Fawver for several weeks prior to this incident.  On the last day Appellant worked at his aunt's home,[2] Ms. Fawver left Appellant alone at the house while she went to get sandwiches for lunch.  When she returned, she testified that Appellant was

---

[1] Laura Fawver is Appellant's aunt.  N.T., 11/29/2017, at 27.

[2] The record is not clear which day this was, but it was within a few days prior to June 3, 2015.

*Retired Senior Judge assigned to the Superior Court.

acting "weird" and "antsy." N.T., 11/29/2017, at 34-35. Then, on June 3, 2015, Ms. Fawver returned home from work to find her back door had been forced open; when she opened it, the door frame fell into the home. She noticed and reported to police that day that her small, movable safe, which contained approximately $11,000 in cash, the deed to her residence, and her social security card, was missing.

According to Ms. Fawver, for many years, she had been saving cash in mostly $100 and $50 denominations and placing the bills in her safe. When she paid Appellant for his work, Appellant saw her retrieve cash from her bedroom. Even though she expected him to continue working after June 3, 2015, Appellant failed to return to her home after that date.

During the police investigation, they discovered that within days of the incident, Appellant deposited $2,000 in cash into his bank account, and all of the bills were in $50 denominations. In contrast, during the preceding two months, Appellant's bank account had no activity and a balance of $0.27. Further, around this same time, Appellant bought a $2,000 car stereo and showed his brother, Anthony Haubert, a large stack of money. When asked, Appellant claimed to police that he got this money from selling heroin.

During the course of its investigation, police interviewed, *inter alia*, Ms. Fawver, Appellant's father, Gary Haubert, Appellant's brother, Anthony Haubert, and a bank teller, Michelle Fry. According to Anthony, Appellant told him that he got the stack of money from his aunt's safe, and that

Appellant explained to him that when he was working outside at Ms. Fawver's house, she left to get lunch; while his aunt was away, Appellant entered the home and "got some money from a safe." *Id.* at 94. Based upon the information gathered by police, Appellant was charged with the aforementioned crimes.

A jury trial was held on November 29, 2017. The Commonwealth's witnesses testified consistently with their police interviews. However, at trial, Anthony stated that he could not remember the contents of his statement to police.[3] The Commonwealth moved for the statement's admission, which the court permitted without objection.[4] *Id.* at 138-39.

On November 29, 2017, the jury convicted Appellant of burglary, criminal trespass, and theft by unlawful taking, and the trial court found Appellant guilty of the summary offense of criminal mischief.[5] On January 4,

---

[3] At trial, Anthony rebuffed the Commonwealth's attempt to elicit information which he had previously disclosed to police in his signed, written statement. *See* N.T., 11/29/2017, at 90, 93-95, 97. He attributed his lack of memory of his statement to police to his being on drugs at the time. *Id.* at 90, 93. Pennsylvania State Police Trooper Steve Arnold testified that Anthony did not appear to be intoxicated from controlled substances at the time Anthony wrote the statement and was interviewed. *Id.* at 113-14.

[4] *See* Pa.R.E. 803.1(4). Appellant makes no claim relating to the statement's admission.

[5] The Commonwealth originally charged Appellant with criminal mischief, a misdemeanor of the third degree. However, during the trial, the Commonwealth moved to amend the criminal mischief charge to a summary

*(Footnote Continued Next Page)*

2018, the trial court sentenced Appellant to 27 to 60 months of incarceration, followed by 3 years of probation, for burglary; 9 to 60 months of incarceration for criminal trespass; 12 to 60 months of incarceration for theft by unlawful taking; fines for the criminal mischief count; and restitution in the amount of $11,350, plus costs. The trial court ordered all incarceration sentences to run concurrently. Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant challenges the sufficiency of the evidence supporting his convictions. Appellant's Brief at 8. The crux of Appellant's argument is that he was not the individual who entered the victim's home and took the safe containing money and documents. *Id.* at 10. Specifically, Appellant contends lack of eyewitnesses, lack of physical evidence, lack of police investigation, Ms. Fawver's failure to inform officers the day of the incident that she suspected Appellant and another individual, Ms. Fawver's doubt that Appellant knew she had a safe in her bedroom, and the differing amounts between what was stolen and what Appellant deposited into his bank account, were insufficient to prove he was the person who committed the crimes. *Id.* at 13-14.

*(Footnote Continued)* _____

offense due to the pecuniary loss being less than $500, which the trial court granted. N.T., 11/29/2017, at 131; *see* 18 Pa.C.S. § 3304(b).

- 4 -

Our standard of review in challenges to the sufficiency of the evidence

is to determine

> whether, viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 716 (Pa. Super. 2015)

(citation omitted).

Our review of the record confirms that, when viewing all the evidence

admitted at trial in the light most favorable to the Commonwealth as the

verdict winner, there was sufficient evidence to enable the jury to conclude

that Appellant was the perpetrator.[6]  Appellant's convictions were premised

---

[6] ***See*** Trial Court Opinion, 5/8/2018.  In its opinion, the trial court cited the incorrect standard for a sufficiency-of-the evidence claim.  Rather, it cited the standard for a weight-of-the evidence claim.  ***Id.*** at 1 (unnumbered). Appellant does not raise a weight-of-the-evidence claim.  In this regard, the trial court erred.  Nonetheless, for the reasons discussed *infra*, we conclude that the Commonwealth introduced sufficient evidence to sustain Appellant's convictions.  ***See Commonwealth v. Clouser***, 998 A.2d 656, 661 n.3 (Pa. Super. 2010) ("It is well-settled that this Court may affirm on any basis."); ***Commonwealth v. Walls***, 144 A.3d 926, 931 (Pa. Super. 2016) ("Whether sufficient evidence exists to support the verdict is a question of law; our
*(Footnote Continued Next Page)*

upon the testimony of several witnesses, his brother's signed witness statement to police, bank surveillance video, and Appellant's bank statements.

The Commonwealth established that, while Ms. Fawver was away from her home, a door to her home had been forced open and her safe containing $11,000 in mostly $100 and $50 bills was stolen from her bedroom. N.T., 11/29/2017, at 26-31, 38-39, 50, 70. Appellant had been working for Ms. Fawver, and on what ended up being his last day of work, he was acting weird after she returned to the house from buying sandwiches. *Id.* at 34-35, 37-38, 82. Further, even though Ms. Fawver expected Appellant to continue working for her, he never returned after the safe was stolen. *Id.* at 32-33, 36.

Appellant's brother told police that Appellant had shown him a huge stack of money shortly thereafter, which Appellant told his brother that he took from the safe when his aunt left to buy lunch. *Id.* at 94; *see also id.* at 88, 92, 110-11. This coincided with when Appellant's brother and father noticed Appellant coming home with new items, including a $2,000 car stereo. *Id.* at 84, 94, 106. Within days of reporting the safe missing, Appellant made a $2,000 cash deposit in all $50 bills, which is consistent

*(Footnote Continued)* _____

standard of review is *de novo* and our scope of review is plenary.") (citation and internal quotation marks omitted).

with Ms. Fawver's testimony about the denomination of the stolen bills. *Id.* at 53-55, 109. Appellant's bank account had no activity and a balance of $0.27 during the preceding months, and by August 2015, it was once again nearly depleted, with a balance of less than $45. *Id.* at 59-60. Although Appellant claimed to police that he received the money from drug transactions, Troopers Arnold and Mark Fisher testified that they rarely saw $50 bills used in drug transactions; smaller denominations are typically used for street-level transactions. *Id.* at 107, 109, 134-36. Trooper Michael Nicholas's testimony showed that Ms. Fawver's rear door to her home had been forced open, that Appellant knew Ms. Fawver kept cash in her bedroom, and that Appellant admitted to being in the victim's home the day before she discovered the safe was missing. *Id.* at 63-64, 67-68, 71, 75-76.

While the jury heard Ms. Fawver testify that she reported to police her belief that Appellant and another individual may have been involved, *id.* at 36, the jury had the opportunity to hear and view the evidence to reach its own conclusion regarding whether Appellant was the individual who entered his aunt's home and removed the safe from her bedroom. "[T]he Commonwealth may sustain its burden by means of wholly circumstantial evidence" and "the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence, coupled with the reasonable inferences drawn

therefrom, overcomes the presumption of innocence." ***Commonwealth v. Lopez***, 57 A.3d 74, 80 (Pa. Super. 2012). Putting these pieces of evidence together, the jury was entitled to conclude that a person broke into Ms. Fawver's home intending to take her safe unlawfully, that such person in fact unlawfully took the safe, and that Appellant was that person.

Thus, when viewing all the evidence at trial in the light most favorable to the Commonwealth, we conclude that the Commonwealth introduced sufficient evidence to establish that Appellant committed the aforementioned crimes.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 11/9/2018