J-A07038-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC BRADLEY DERR | : | |
| | : | |
| Appellant | : | No. 163 MDA 2025 |

Appeal from the Judgment of Sentence Entered November 13, 2024
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0000507-2021

BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:                    **FILED MAY 07, 2026**

Appellant, Eric Bradley Derr, appeals from the judgment of sentence of 28 months' probation, with the first 12 months to be served on house arrest, imposed after a jury found him guilty of 28 counts of unlawful use of a computer, 18 Pa.C.S. § 7611(a).  We affirm.

The trial court summarized the facts and procedural history of Appellant's case, as follows:

> [Appellant] joined the Williamsport Bureau of Police in 2013, after graduating from the Mansfield Police Academy.  After three years, he was promoted to the position of corporal, by which he was a field supervisor or a watch commander.  [Appellant] was fully aware of [T]he [Pennsylvania Justice Network (JNET)] data computer system available to police departments and their officers as a criminal justice tool.[1]  [Appellant] electronically

---

[1] The Commonwealth Court has explained:

*(Footnote Continued Next Page)*

signed the JNET user agreement as part of his training that explicitly stated it was "not for personal or non-criminal justice purposes." This was clearly a prohibition that he understood.

After an audit of his usage of JNET, [Appellant] was criminally charged with [28] counts of unlawful use of the computer system under 18 Pa.C.S. [§] 7611(a)(2). The Commonwealth's theory at trial was that female driver[']s license photos were pulled by [Appellant] for viewing due to his sexual interest or proclivity. The photos were of attractive females, almost all of which were in [Appellant's] age group. He asked an intern if he thought some were hot.

The jury did not excuse [Appellant,] despite his various explanations of the reasons he accessed the photos, such as at the request of family members, or to only view personal friends, acquaintances, co-workers[,] and the like. His testimony was there was nothing "evil" in his pulling the photos up. It was conceded by him that it was without authorization, and there was no criminal investigation involving them.

The jury found him guilty of unlawful use of the JNET system on all [28] counts (there were twenty-eight separate individuals) after a three-day trial. This [c]ourt imposed concurrent sentences of probation with restrictive conditions for a period of [28] months, with the first [12] months on house arrest, as well as a

_____

JNET is a web-based portal through which authorized users in the Commonwealth can access public safety and criminal justice information maintained by separate third-party data providers. *See* https://www.pa.gov/agencies/jnet.html (last visited March 17, 2025). The data available through JNET comes from various contributing municipal, county, state, and federal agencies and is used by law enforcement and public safety officials at the federal, state, and local levels in Pennsylvania. Users include, *inter alia*, employees of state and municipal police. ***Id*.**

***Mutchler v. Pennsylvania Off. of Admin. (Off. of Open Recs.)***, 334 A.3d 57, 60 (Pa. Cmwlth. 2025). ***See also Commonwealth v. Krout***, 285 A.3d 914 (Pa. Super. 2022) ("This Court is not bound by the decisions of the Commonwealth Court, but 'such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate.'") (quoting ***Commonwealth v. Hunt***, 220 A.3d 582, 590 (Pa. Super. 2019) (citation omitted)).

fine of [$100] … on each count.  [Appellant] filed a post-sentence motion which was denied by an order dated and entered January 23, 2025.

Trial Court Opinion (TCO), 4/1/25, at 1-2.

Appellant filed a timely notice of appeal, and he and the court complied with Pa.R.A.P. 1925.  Herein, Appellant states four issues for our review:

1. Whether the court erred in failing to grant the motion to dismiss the charges as being *de minimis* as set forth in 18 Pa.C.S.[] § 312?

2. Whether the court erred in failing to grant the motion *in limine* to preclude any evidence of any alleged sexual relations or inappropriate behavior on the part of [Appellant,] including relationships with co-workers?

3. Whether the court erred in failing to sustain objections during the course of the trial relative to physical encounters and testimony of prior sexual relations?

4. Whether the court erred in failing to give a jury charge consistent with [**Van Buren v. U.S.**, 593 U.S. 374 (2021),] interpreting the statute similar to the Pennsylvania statute?

Appellant's Brief at 10 (unnecessary capitalization omitted; some formatting altered).

Appellant first contends the court erred in failing to grant his oral motion, made prior to the imposition of sentence, "for a dismissal of the charges as they were *de minimis*[,]" pursuant to 18 Pa.C.S. § 312(a).  **Id.** at 15.  That statute states:

**(a) General rule.--**The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was

- 3 -

infringed nor inconsistent with the purpose of the law defining the offense;

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S. § 312(a).

Our standard of review for a claim that the trial court erred in refusing to dismiss a charge as *de minimis* is whether the court committed an abuse of discretion. **Commonwealth v. Deible**, 300 A.3d 1025, 1033 (Pa. Super. 2023). Additionally, "[a]n offense alleged to be *de minimis* in nature should not be dismissed where either harm to the victim or society in fact occurs." **Commonwealth v. Lutes**, 793 A.2d 949, 963 (Pa. Super. 2002).

Here, Appellant was convicted of 28 counts of unlawful use of a computer, which is defined, in relevant part, as follows:

**(a) Offense defined.--**A person commits the offense of unlawful use of a computer if he:

\*\*\*

(2) intentionally and without authorization accesses or exceeds authorization to access, alters, interferes with the operation of, damages or destroys any computer, computer system, computer network, computer software, computer program, computer database, World Wide Web site or telecommunication device or any part thereof[.]

18 Pa.C.S. § 7611(a)(2).

- 4 -

Appellant insists that in enacting this statute, "it is clear … the legislature's intentions were to prevent individuals from causing damage on [a] computer system, computer network or other world wide web. [Appellant's] actions did none of that." Appellant's Brief at 17. Appellant also argues "there [was] no testimony on record that anyone was harmed or that society suffered any damage or injuries as a result of these actions." *Id.* Therefore, he maintains his offenses were *de minimis* and should have been dismissed.

The trial court disagreed with Appellant, explaining:

The purpose of 18 Pa.C.S. [§] 7611(a) prohibiting unauthorized access to a law enforcement data base is for confidentiality and the integrity of the system. In order to protect JNET's information from misuse, unauthorized access to the computer system must be prohibited. This purpose would be frustrated if the officers exceed[ed] their authorization to access the computer system. [Appellant's] unauthorized access to JNET for personal purposes "actually cause[d] or threaten[ed] the harm or evil sought to be prevented by the law defining the offense" in a manner that was not "too trivial to warrant the condemnation of conviction." 18 Pa.C.S. § 312(a)(2).

\*\*\*

Perhaps an innocuous access on just a few occasions would be different; however, the use of JNET twenty-eight (28) times over a substantial period of time [to obtain] … photos of females was an abuse of his authority as a police officer to access JNET. Citizens … expect privacy in governmental records, particularly personal identification information. *See* … Right[-]to[-]Know Law, … 65 P.S. § 67.708(b)(6)(i)(A), (B).[2]

_____

2 These provisions of the Right-to-Know Law exempt "from access by a requester under this act … the following personal identification information:" *(Footnote Continued Next Page)*

J-A07038-26

> Finally, there could be an impact on the Williamsport Police Department, *i.e.*, the potential to lose the ability to have JNET in the future by virtue of this conduct.

TCO at 4-5 (footnote omitted; some formatting altered).

In response to the court's reasoning, Appellant simply states the court's "conclusions do not justify denying the actions as *de minimis*." Appellant's Brief at 18. This bald assertion is insufficient to demonstrate the court abused its discretion in refusing to dismiss his charges. ***See Commonwealth v. Wright***, 961 A.2d 119, 136 (Pa. 2008) (concluding issue was meritless where the appellant did "not allege any facts to rebut the trial court's finding[,]" but "merely offer[ed] bald assertions the trial court abused its discretion"). Accordingly, no relief is due on Appellant's first issue.

Second, Appellant asserts the court erred in failing to grant his motion *in limine* to preclude testimony regarding his "sexual relationships or inappropriate behavior." Appellant's Brief at 18 (emphasis omitted). Preliminarily, we note:

> The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence

---

> (A) A record containing all or part of a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number.
>
> (B) A spouse's name, marital status or beneficiary or dependent information.

65 P.S. § 67.708(b)(6)(i)(A), (B).

lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Young***, 989 A.2d 920, 924 (Pa. Super. 2010) (cleaned up).

Aside from setting forth our standard of review of a trial court's evidentiary rulings, Appellant's entire argument in support of his second issue amounts to the following:

As indicated, [Appellant] filed a motion *in limine*. By order dated March 28, 2024, [the trial court] denied the motion *in limine*[,] contending the Commonwealth's position that the evidence of sexual relations was probative and relevant to establish the motive of [Appellant].

The defense argued that this information was done solely to paint [Appellant] in a bad light. None of the salacious information would prove any element of any of the offenses for which [Appellant] was charged.

The failure of the court to grant the motion *in limine* then [gave] rise to objectionable testimony during the trial.

Appellant's Brief at 18-19 (citations to the reproduced record omitted).

This undeveloped argument is wholly insufficient to demonstrate any abuse of discretion by the trial court in denying his motion *in limine*. Appellant does not identify what specific evidence he sought to preclude in his motion, or offer any argument, supported by pertinent legal authority, to demonstrate the evidence was irrelevant and/or inadmissible under the Rules of Evidence. Accordingly, his second issue is waived. ***See Commonwealth v. Hardy***, 918

A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. … [W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

Third, Appellant argues the court erred by overruling his "multiple objections to testimony relative to alleged sexual interaction[s]." Appellant's Brief at 19. He explains:

> Specifically, Billie Strickler Fritz was called to testify by the Commonwealth. She is the sister-in-law of Appellant…. During her testimony[,] she was asked [questions] concerning [Appellant's] physical encounters at a wedding with an individual identified as [K.C.].[3] Despite an objection by defense, the court permitted that testimony.
>
> Likewise, Ms. Fritz was questioned about [Appellant's] contact with [E.G.]. Initially, the [c]ourt overruled the objection and then after the allegations of [Appellant's] receiving oral sex [from E.G.] were testified to in front of the jury, the court then sustained the objection based upon the lack of personal knowledge.

*Id.* (citations to the reproduced record omitted). According to Appellant, the fact K.C. and E.G. were individuals he searched for on JNET "should not have given rise to any admissibility of the alleged relationships or actions between [Appellant] and the individuals named." *Id.* at 20.

---

[3] Ms. Fritz claimed Appellant had sexual contact with K.C., as well as another woman, E.G., at Appellant's own wedding to Ms. Fritz's sister. *See* N.T. Trial, 8/21/24, at 31-32.

Appellant also complains the court erred by overruling his objection when, "[d]uring trial, Tyson Minier, a Williamsport Bureau of Police Officer, … was questioned whether he was aware of [Appellant's] having sexual contact with co-workers." *Id.* (citation to the reproduced record omitted). The court overruled Appellant's objection, and Officer Minier testified he was aware of relationships Appellant had with two female officers. N.T. Trial, 8/21/24, at 67. On appeal, Appellant insists "there [was] no basis or justification for that type of questioning[,]" as "[i]t had nothing to do with whether or not there was improper access or exceeding authority to access JNET." Appellant's Brief at 20. He contends the Commonwealth utilized this line of questioning "with the sole purpose of painting [Appellant] in a bad light before the jury." *Id.*

Appellant further argues the testimony by Ms. Fritz and Officer Minier was not admissible to prove his motive under Pennsylvania Rule of Evidence 404(b)(3), as "the Commonwealth was required to give reasonable written notice in advance of trial, which it did not do." *Id.* at 21; *see also* Pa.R.E. 404(b)(2) (stating evidence of prior bad acts "may be admissible for another purpose, such as proving *motive*, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident") (emphasis added); Pa.R.E. 404(b)(3) (directing that if the Commonwealth seeks to admit prior bad acts evidence in a criminal trial, it "must provide reasonable written notice in advance of trial so that the defendant has a fair opportunity to meet it, or during trial if the court excuses pretrial notice on good cause shown, of the specific nature, permitted use, and reasoning for the use of any such

evidence the prosecutor intends to introduce at trial"). Appellant also suggests, without elaboration, that even if this evidence was relevant and admissible under Pennsylvania Rule of Evidence 402,[4] it should have been precluded because its probative value was outweighed by the danger of unfair prejudice. *See* Pa.R.E. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). Finally, he indicates Ms. Fritz's testimony should have been precluded because the "alleged victims" did not testify. Appellant's Brief at 20.

Appellant has waived his claims that the Commonwealth failed to give notice under Rule 404, and that the at-issue evidence should have been precluded as unduly prejudicial under Rule 403. Specifically, in regard to Ms. Fritz's testimony about Appellant's contact with K.C., defense counsel objected "as to the relevance." N.T. Trial, 8/21/24, at 29. A sidebar was then held, during which the following discussion occurred:

> [The Commonwealth]: Your Honor, the witness is going to testify that [K.C.] is one of the women that [Appellant] had sexual contact with. … [A]nd she is one of the women who was run by [Appellant in his JNET search] and [is the victim of] one of the charges. Her name will pertain to one of the charges.

---

[4] That rule states: "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402.

[Defense Counsel]: How does she know they had sexual contact?

[The Commonwealth]: Because she saw it at the wedding.  But I wasn't [going to] say wedding.

[Defense Counsel]: Judge, all they're trying to do is paint [Appellant] in the worst possible light they can.  I don't know how that's relevant.

*Id.* at 30.  Ultimately, the court overruled defense counsel's objection after the Commonwealth indicated it was going to ask Ms. Fritz about each victim of Appellant's 28 counts and would "connect the dots" once done.  *Id.*[5]

When the Commonwealth continued its questioning of Ms. Fritz and asked how she knew E.G., Ms. Fritz replied:

[Ms. Fritz:] [E.G.] is the ex-wife of a former … Williamsport Police Officer[] that … [Appellant] had sexual relations with before and immediately within hours of saying his vows.

*Id.* at 31.  Defense counsel again objected, stating, "I don't know how she knows this."  *Id.*  After Ms. Fritz indicated she "witnessed" the sexual encounters about which she was testifying, the court overruled Appellant's objections.  *Id.*

In regard to the testimony of Officer Minier, when the Commonwealth asked if he was "aware of any sexual contact [Appellant] had with any of [their] coworkers[,]" defense counsel stated: "Objection, Your Honor.  What's the relevance?  It's a broad question.  My God."  *Id.* at 66-67.

---

[5] We note defense counsel made no further objection, or request to strike the at-issue testimony by Ms. Fritz, once the Commonwealth had completed its direct-examination of her.  *See id.* at 33.

- 11 -

Clearly, Appellant at no point raised any objection to the at-issue testimony by Ms. Fritz or Officer Minier on the basis that the Commonwealth had failed to provide adequate notice under Rule 404. He also raised no specific objection to either witness's testimony on the grounds that its prejudicial impact outweighed its probative value. Thus, he has waived these arguments on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *see also Commonwealth v. Santiago-Burgos*, 314 A.3d 535, 545 (Pa. Super. 2024) ("The rule is well settled that a party complaining on appeal of the admission of evidence in the [c]ourt below will be confined to the specific objection there made.") (citation omitted); *Commonwealth v. Lopez*, 57 A.3d 74, 82 (Pa. Super. 2012) ("If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal.") (citations omitted).[6]

---

[6] Even if we liberally construed defense counsel's comment that the Commonwealth was trying to "paint [Appellant] in the worst possible light" as an argument that Ms. Fritz's testimony should have been precluded as unduly prejudicial, Appellant fails to present any meaningful argument on appeal that the court abused its discretion in overruling that objection. N.T. Trial, 8/21/24, at 30. Instead, he simply states, "[t]he Commonwealth's theory of the case tainted and attempted to portray [Appellant] as a predator…." Appellant's Brief at 20. However, at no point did defense counsel argue before the trial court that the Commonwealth was attempting to portray Appellant "as a predator…." *Id.* Furthermore, the at-issue testimony did not in any way suggest the contact between Appellant and K.C. or E.G. was non-consensual. Accordingly, this claim is waived and/or meritless.

Finally, Appellant's argument Ms. Fritz's testimony should have been precluded because the "alleged victims" did not testify is meritless. Appellant's Brief at 20. Ms. Fritz testified she **personally witnessed** the sexual activity between Appellant and K.C. **See** N.T. Trial, 8/21/24, at 29, 31 (Ms. Fritz's stating she "witnessed a physical encounter" Appellant had with K.C., which was "[i]ntimate contact"); **id.** at 31 (reiterating she "did witness it" when asked how she knew about Appellant's sexual encounter with K.C.). Regarding Appellant's sexual contact with E.G., Ms. Fritz testified Appellant was caught "by multiple people … [g]etting oral sex" from E.G. at his wedding. **Id.** at 32. When defense counsel objected and Ms. Fritz admitted she did not witness that contact herself, the court **sustained** defense counsel's objection. **Id.** Notably, counsel did not ask the court to strike Ms. Fritz's testimony or give any instruction to the jury to disregard it. **Id.**

In sum, Appellant's arguments challenging the court's admission of this evidence are either waived and/or meritless. Moreover, he offers no meaningfully developed response to the court's conclusion that "[t]he challenged evidence was relevant and probative to the Commonwealth's assertion that [Appellant's] activity was not innocuous but for his sexual proclivity." TCO at 5. Consequently, he has failed to demonstrate any abuse of discretion by the court, and his third issue warrants no relief.

In Appellant's fourth and final issue, he avers "[t]he [t]rial [c]ourt erred in failing to give a jury charge consistent with the United States Supreme Court's decision in [**Van Buren**, which] … interpret[ed] a statute similar to

the Pennsylvania statute." Appellant's Brief at 22. Appellant's entire argument in support of this claim is as follows:

> This matter was addressed by the Superior Court in a previous appeal filed by the Commonwealth following the granting of a petition for writ of *habeas corpus* in the Court of Common Pleas of Lycoming County, Pennsylvania. At the time of that filing, the record was solely from a preliminary hearing and a hearing on a *habeas* petition. This Court was not provided with a full transcript as there was no full transcript of a trial at that point but rather, just the allegations from a preliminary hearing.
>
> In the … decision in that appeal (***Commonwealth v. Derr***, 293 A.3d 671 (Pa. Super. 2023)[)], this Honorable Court was reviewing the granting of a pretrial *habeas corpus* by examining the evidence and reasonable inferences in the light most favorable to the Commonwealth. …
>
> The panel concluded that since the legislature did not define ["]exceeds["] or ["]authorized[,"] the plain language of the statute does not comport with the United States Supreme Court['s] decision in [***Van Buren***.] ***Id.***
>
> [Appellant] contends that the trial court should have given a jury instruction consistent with the panel's decision in the initial appeal. Obviously, the legislature did not provide definition[s] and therefore, the Court had to make its own interpretation of what the legislature intended. [Appellant's] position is that even with the decision in the initial appeal[,] the trial court could have supplemented jury instructions with the analysis in [***Van Buren***,] … by giving the jury the opportunity to decide whether … the statute covers improper motives for obtaining the information otherwise available to them. The trial court refused to give that instruction and relied strictly on the standard jury charge and [Appellant] was denied the opportunity to make the argument that [***Van Buren***] provided.

***Id.*** at 22-23 (unnecessary capitalization omitted).

Appellant's argument is inadequate to demonstrate he is entitled to relief. We have explained, "[t]he relevant inquiry for this Court when reviewing a trial court's failure to give a jury instruction is whether such charge

was warranted by the evidence in the case." ***Commonwealth v. Baker***, 963 A.2d 495, 506 (Pa. Super. 2008) (citing ***Commonwealth v. Boyle***, 733 A.2d 633, 639 (Pa. Super. 1999) (citation omitted)). Notably, Appellant does not explain exactly what charge the court should have provided, or cite to where in the record he requested it.

However, the Commonwealth points us to the following portion of the trial transcript wherein defense counsel requested a jury instruction on ***Van Buren***:

> [Defense Counsel]: Your Honor, our statute does not define ["]exceeds authorized use,[" and] neither does our point for charge. Our standard point for charge does not mention the words. What it does is it sends you back to unlawful use definitions in Section 15.7601.
>
> My point is the United States Supreme Court gives a definition of what ["]exceeding authorized use["] means, and that's why I would request it.

N.T. Trial, 8/23/24, at 4. In rejecting defense counsel's request, the trial court stated it intended "to use the language from the Superior Court opinion" previously issued in this case to instruct the jury. ***Id.*** at 6.

We discern no error in the court's decision. In our prior opinion in ***Derr***, we explained:

> [T]he Commonwealth alleged that when [Appellant] looked up information in JNET for personal reasons, he exceeded his authorization to access that computer system. Our task, therefore, is to determine whether the terms "exceeds authorization to access … any … computer [or] computer system … or any part thereof" apply to the charged conduct in light of the … principles of statutory construction.

[In granting Appellant's *habeas* petition, t]he trial court followed **Van Buren**, which the Commonwealth maintains was erroneous. There, the defendant was a law enforcement officer who had used the computer in his patrol car to obtain information from a law enforcement database for personal reasons. He was charged with violating the federal Computer Fraud and Abuse Act of 1986 ("CFAA"). That act imposes criminal liability when a person "intentionally accesses a computer without authorization or exceeds authorized access" and obtains information. 18 U.S.C. § 1030(a)(2).

The United States Supreme Court concluded that the defendant's acts did not fall within the CFAA's parameters. It observed the CFAA explicitly defines "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter." **See** 18 U.S.C. § 1030(e)(6). The Court noted that the parties agreed that Van Buren had "access[ed] a computer with authorization" and had "obtain[ed]" information in the computer. **Van Buren**, [593 U.S. at 382]. The issue was whether he was "entitled so to obtain" the information. **Id.** The Court concluded that he was. Referring to dictionary definitions, it found that the word "so" referred to "the previously stated 'manner or circumstance' in the text" of the statute. **Id.** at [384]. The Court thus found that the CFAA was limited to cases in which a person obtains information "from particular areas in the computer—such as files, folders, or databases—to which their computer access does not extend." **Id.** at [378].

[Appellant] does not contend that the Unlawful Use of a Computer statute is ambiguous. Rather, he argues that the plain language of the statute does not encompass the allegations against him, for the reasons set forth in **Van Buren**.

The reliance on **Van Buren** is misplaced. Not only was the Court engaging in statutory construction of a federal statute, but the CFAA also differs from Pennsylvania's Unlawful Use of a Computer statute in an important way. Key to the **Van Buren** Court's decision was the statutory definition of "exceeds authorized access" and its use of the phrase "is not entitled so to obtain." However, the Unlawful Use of a Computer statute does not employ a definition of the phrase "exceeds authorized access" or anywhere use "is not entitled so to obtain."

- 16 -

The General Assembly has given us a definition of "access" that applies to this statute. "Access," for present purposes, means, "To intercept, instruct, communicate with, store data in, retrieve data from or otherwise make use of any resources of a computer, computer system, computer network or database." 18 Pa.C.S.[] § 7601.

However, there is no statutory definition of "exceeds" and "authorized." We therefore turn to their plain, ordinary meaning. According to Merriam-Webster, to "exceed" means "to be greater than or superior to," "to go beyond a limit set by," or "to extend outside of." "Authorization" is defined by Black's Law Dictionary as "[o]fficial permission to do something; sanction or warrant," or "[t]he official document granting such permission." The synthesized common meaning of the phrase "exceeds authorization" is therefore, "goes beyond the limit of official permission."

Combining these definitions, it is apparent that the "exceeds authorization to access" language of subsection (a)(2) of Unlawful Use of a Computer prohibits a person from going beyond the limit of their official permission to "access" (as statutorily defined) a computer, computer system, computer network, computer database, etc., or any part thereof. This includes surpassing limitations on permitted purposes for retrieving data. Here, the Commonwealth presented evidence that [Appellant's] official permission to retrieve data from JNET was limited to use for official police purposes, but that he retrieved data from JNET for personal reasons. This constitutes *prima facie* evidence that [Appellant] went beyond the limit of his official permission to retrieve data from the JNET computer system, and therefore committed the crime of Unlawful Use of a Computer under subsection (a)(2).

We find [Appellant's] argument that he did not exceed his authorization to access JNET because he had permission to access all information contained within that system unconvincing. His permission was not unfettered. There was a limit. [Appellant's] authorization to use JNET stopped where official police work ended, and personal use began. The plain language of the statute resolves this issue.

***Derr***, 293 A.3d 679-80 (footnotes omitted).

- 17 -

Clearly, the **Derr** panel held the analysis in **Van Buren** is not applicable to Pennsylvania's unlawful use of a computer statute. Accordingly, Appellant's argument the court should have provided an instruction pursuant to **Van Buren** is meritless, and we discern no abuse of discretion in the court's refusing to do so.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/07/2026